CENTER FOR DISABILITY ACCESS
Ray Ballister, Jr., Esq., SBN 111282
Phyl Grace, Esq., SBN 171771
Chris Carson, Esq., SBN 280048
Elliott Montgomery, Esq., SBN 279451
Mail: PO Box 262490
San Diego, CA 92196-2490
Delivery: 9845 Erma Road, Suite 300
San Diego, CA 92131
(858) 375-7385; (888) 422-5191 fax
ElliottM@potterhandy.com
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Rafael Arroyo, Jr.,** | **Case No.** 2:19-cv-02720-PA-MRW |
| Plaintiff, | **Plaintiff's Opposition to Defendants' Motion to Dismiss Complaint** |
| v. | |
| **Kazmo, LLC,** a California Limited Liability Company; **Staffing and Management Group, Inc.,** a California Corporation; and Does 1-10, | Date:   July 15, 2019 <br> Time:   1:30 p.m. |
| Defendants. | **Hon. Percy Anderson** |

1

# TABLE OF CONTENTS

2

TABLE OF CONTENTS...................................................................................i

MEMORANDUM OF POINTS AND AUTHORITIES ..............................1

I.   Preliminary Statement .................................................1

II.  The Complaint is sufficiently pled....................................1

III. Arroyo is a profoundly disabled person and an active ADA
     litigator who personally encountered a blatant path of
     travel and sales counter violations at Mobil gas station
     and who has declared that he intends to return to the gas
     station but is deterred from returning until the gas
     station is fully compliant. There can be no doubt that
     Arroyo has met the broad and liberal test for standing in
     ADA cases ...................................................................6

A.   Arroyo suffered an injury in fact because he personally
     encountered inaccessible path of travel and sales
     counter at the Mobil gas station in March 2019. ......................7

B.   Arroyo has standing to obtain injunctive relief because he
     is deterred from returning to the gas station until the
     unlawful barriers are removed. ....................................9

IV.  There is no basis for the court to decline supplemental
     jurisdiction over the Unruh claim. ............................................ 12

A.   The defendants' argument about Plaintiff's engaging in improper
     forum-shopping has no legal merit.......................................... 13

B.   The federal rules of civil procedure govern the content of the
     Complaint, not the California procedural rules.................. 13

Opposition to Motion to Dismiss                    Case: 2:19-cv-02720-PA-MRW

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

V.   By disparaging Mr. Arroyo and requiring specific
procedural and substantive conditions to be met before
he can file Complaint – and noting the numbers of his
ADA cases – the defendant seeks to influence the court
with irrelevant material ............................................................. 15

A.  Serial Litigation is a Legitimate Method of Enforcement .......... 16

B.  The Plaintiff's "Motives" Are Irrelevant ..................................... 17

C.  Litigation history is not a valid legal basis to challenge the
plaintiff's standing or credibility or to diminish rights ........ 18

VI.   Conclusion ................................................................................... 19

Opposition to Motion to Dismiss                    Case: 2:19-cv-02720-PA-MRW

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Cases**

*Antoninetti v. Chipotle Mexican Grill, Inc.,*
   614 F.3d 971 (9th Cir. 2010) ................................................................. 17

*Arizona ex rel. Goddard v. Harkins Amusement Enterprises, Inc.*
   603 F.3d 666 (9th Cir. 2010) ................................................................1

*Chapman v. Pier 1 Imports (U.S.) Inc.,*
   631 F.3d 939 (9th Cir. 2011) ................................................................2

*City of Chicago v. Int'l College of Surgeons,*
   522 U.S. 156 (1997) ............................................................................. 12

*Civ. Rights Educ. and Enf't Ctr. v. Hosp. Properties Tr.,* 867 F.3d 1093 (9th
   Cir. 2017) ........................................................................................... 11

*Doran v. 7-Eleven, Inc.,* 524 F.3d 1034 (9th Cir. 2008) ...............7, 10, 11

*Executive Software N. Am., Inc. v. U.S. Dist. Court for the N. Dist. of Cal.,*
   24 F.3d 1545 (9th Cir. 1994) ................................................................ 12

*Feezor v. Chico Lodging, LLC,*
   422 F. Supp. 2d 1179 (E.D. Cal. 2006) ................................................. 18

*Gordon v. Virtumondo, Inc.,*
    575 F.3d 1040 (9th Cir. 2009) .......................................................... 16

*Kuba v. 1-A Agr. Ass'n,*
    387 F.3d 850 (9th Cir. 2004) ............................................................ 12

*Los Angeles Cnty. Metro. Transp. Auth. v. Superior Court,*
   123 Cal. App. 4th 261 (2004) .............................................................. 18

*Moeller v. Taco Bell Corp.*
   816 F.Supp.2d 831 (N.D. Cal. 2011) ....................................................2

*Molski Evergreen Dynasty Corp. I,*

    500 F.3d 1047 (9th Cir. 2007) ......................................................... 19

*Murray v. GMAC Mortg. Corp.,*

    434 F.3d 948 (7th Cir. 2006) .......................................................... 16

*Natl. Fedn. of the Blind of California v. Uber Techs., Inc.,* 103 F. Supp. 3d

    1073 (N.D. Cal. 2015)................................................................7

*Parr v. L & L Drive-Inn Restaurant,*

    96 F.Supp.2d 1065 (D. Hawaii  2000) ........................................... 16, 18

*Pickern v. Holiday Quality Foods Inc.,* 293 F.3d 1133 (9th Cir. 2002) ... 11

*Trafficante v. Metro. Life Ins. Co.,* 409 U.S. 205 (1972) ............................6

*Walker v. Carnival Cruise Lines,*

    107 F.Supp.2d 1135 (N.D. Cal. 2000) .................................................. 16

*Wilson v. Murillo*

    163 Cal.App.4th 1124 (2008) ......................................................... 19

*Wilson v. Pier 1 Imports (US), Inc.,* 413 F. Supp. 2d 1130 (E.D. Cal. 2006)

    .................................................................................................7


**Statutes**

28 U.S.C. § 1367 ..................................................................... 12

28 U.S.C. § 1367(c) ................................................................. 12

42 U.S.C. § 12182(a) ...................................................................8

42 U.S.C. § 12182(b)(2)(A)(iv) .......................................................8

42 U.S.C. § 12183(a)(2) ...............................................................2

42 U.S.C. §§ 12183(a)(2).............................................................2

Cal. Gov't Code § 8299 ........................................................... 17

Opposition to Motion to Dismiss         Case: 2:19-cv-02720-PA-MRW

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.  Preliminary Statement

Plaintiff, a paraplegic, filed the instant claims against the defendants because their business failed to provide an accessible path of travel and sales counter. Defendants move for dismissal of the complaint on the basis that Arroyo lacks standing. This argument do not have merit. Arroyo has standing, the Complaint contains sufficient factual allegations, and Arroyo's pleading is sound.

## II.   The Complaint is sufficiently pled

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," and give "the defendant fair notice of what the . . .  claim is and grounds upon which it rests" in compliance with Rule 8(a) of the Federal Rules of Civil Procedure. In order to determine whether a pleading contains the necessary allegations, a party must understand what constitutes a viable claim under the cause of action pled.

Here, Arroyo's claims are based on Title III of the ADA. To succeed on a Title III ADA architectural barrier claim, "a plaintiff must show that: (1) he is disabled . . . (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations" because of his disability.[1]  "The third element—whether plaintiffs were denied public accommodations on the basis of disability—is met if there was a violation of applicable accessibility

---

[1] *Arizona ex rel. Goddard v. Harkins Amusement Enterprises, Inc.*, 603 F.3d 666, 670 (9th Cir. 2010).

standards."[2] This is because discrimination is defined both as either a failure to ensure that alterations are "readily accessible to and useable by persons with disabilities"[3] and, where there are no alterations, "a failure to remove architectural barriers...in existing facilities...where such removal is readily achievable."[4]

Thus, the following is a simplified statement of the elements necessary for Arroyo to allege under this section:

A.  Arroyo must be disabled.

B.  Defendants' facility must be a place of "public accommodation" and, therefore, governed by Title III of the ADA.

C.  Defendants must be responsible parties, i.e., owners, operators, lessors or lessees;

D.  Defendants' facility must have either undergone an alteration that did not comply with the access standards or contain an easily removed barrier that the defendants failed to remove;

E.  Arroyo must have actually encountered this non-removed and unlawful barrier;

F.  The barrier must continue to impact Arroyo because either (1) he will return and face it again or (2) Arroyo is being deterred from returning because of his knowledge of the barrier.

As demonstrated by the table below, Arroyo has made all the necessary factual and legal allegations necessary to state a claim.

///

///

///

---

[2] *Moeller v. Taco Bell Corp.*, 816 F.Supp.2d 831, 847 (N.D. Cal. 2011) *citing*, *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 945 (9th Cir. 2011)
[3] 42 U.S.C. § 12183(a)(2)
[4] 42 U.S.C. § 12182(b)(2)(A)(iv)

Opposition to Motion to Dismiss                    Case: 2:19-cv-02720-PA-MRW

| Element | Fact Alleged |
|---|---|
| 1. Disability | "Plaintiff is a California resident with physical disabilities. He is a paraplegic who cannot walk and who uses a wheelchair for mobility." <br> • (Complaint, p. ¶ 1). |
| 2. Place of Public Accommodation | "The Gas Station is a facility open to the public, a place of public accommodation, and a business establishment." <br> • (Complaint, ¶ 11). |
| 3. Responsible Parties | "Defendant Kazmo, LLC owned the real property located at or about 4311 South Street, Lakewood, California, in March 2019. <br><br> Defendant Kazmo, LLC owns the real property located at or about 4311 South Street, Lakewood, California, currently. <br><br> Defendant Staffing and Management Group, Inc. owned Mobil located at or about 4311 South Street, Lakewood, California, in March 2019. <br><br> Defendant Staffing and Management Group, Inc. owns Mobil ("Gas Station") located at or about 4311 South Street, Lakewood, California, currently." |

3

| | |
|---|---|
| | • (Complaint, ¶¶ 2-5). |
| 4. Plaintiff's Encounter with Barriers. | "Plaintiff went to the Gas Station in March 2019 with the intention to avail himself of its goods or services and to assess the business for compliance with the disability access laws.<br><br>Paths of travel are one of the facilities, privileges, and advantages offered by Defendants to patrons of the Gas Station.<br><br>Unfortunately, on the date of the plaintiff's visit, the defendants did not provide accessible paths of travel in conformance with the ADA Standards.[5]<br><br>Currently, the defendants do not provide accessible paths of travel in conformance with the ADA Standards.<br><br>The Gas Station store has a sales counter where it handles its transactions with customers.<br><br>Unfortunately, on the date of the plaintiff's |

[5] For example, there was no safe wheelchair accessible route of travel from the boundary of the site to the entrance of the Gas Station. On information and belief there are other issues with the paths of travel that render them non-compliant. Those issues will be fleshed out in discovery and inspections. The plaintiff seeks to have accessible paths of travel.

4

| | |
|---|---|
| | visit, the defendants did not provide an accessible sales counter in conformance with the ADA Standards.<br><br>Currently, the defendants do not provide an accessible sales counter in conformance with the ADA Standards.<br><br>Plaintiff personally encountered these barriers.<br><br>The lack of accessible facilities created difficulty and discomfort for the Plaintiff."<br><br>• (Complaint, ¶¶ 10, 12-18, 20) |
| 5. The Barriers are Readily Achievable to Remove | "The barriers identified above are easily removed without much difficulty or expense. They are the types of barriers identified by the Department of Justice as presumably readily achievable to remove and, in fact, these barriers are readily achievable to remove. Moreover, there are numerous alternative accommodations that could be made to provide a greater level of access if complete removal were not achievable."<br>• (Complaint, ¶ 22) |

5

| 6. Plaintiff is deterred from returning. | "Plaintiff will return to the Gas Station to avail himself of goods or services and to determine compliance with the disability access laws once it is represented to him that the Gas Station and its facilities are accessible.  Plaintiff is currently deterred from doing so because of his knowledge of the existing barriers and his uncertainty about the existence of yet other barriers on the site. If the barriers are not removed, the plaintiff will face unlawful and discriminatory barriers again."<br>• (Complaint ¶ 23) |
| --- | --- |

Each of the required factual allegations have been made.

**III. Arroyo is a profoundly disabled person and an active ADA litigator who personally encountered a blatant path of travel and sales counter violations at Mobil gas station and who has declared that he intends to return to the gas station but is deterred from returning until the gas station is fully compliant. There can be no doubt that Arroyo has met the broad and liberal test for standing in ADA cases**

Given the generous and broad standing requirement for ADA cases, it is remarkable that the defendants are raising a standing challenge in this case. Decades ago, the Supreme Court held that in civil rights cases—especially where private enforcement suits are the primary method of obtaining compliance—standing must be given a "generous construction" and defined "as broadly as is permitted by Article III of the Constitution."[6] The Ninth Circuit has expressly applied this holding to ADA cases: "The Supreme Court has instructed us to take a broad view of constitutional

---

[6] *Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205, 209 & 212 (1972).

Opposition to Motion to Dismiss                    Case: 2:19-cv-02720-PA-MRW

standing in civil rights cases, especially where, as under the ADA, private enforcement suits are the primary method of obtaining compliance with the Act."[7]

Whenever ADA standing challenges have come before the courts, this has been a guiding principle. "Article III standing should likewise be construed as broadly as possible."[8] "[T]he ADA, the Unruh Act, and the DPA require the court to *construe standing liberally* . . . The ADA, the Unruh Act, and the DPA have granted private citizens a *broad right* to enforce their mandates."[9]

With respect to ADA-architectural-barrier cases, the Ninth Circuit has grappled with standing issues on numerous occasions and laid down a healthy body of published case law. The most significant of Ninth Circuit rulings on the topic is *Chapman v. Pier 1 Imports*,[10] which was decided by an en banc panel. *Chapman* holds that an ADA plaintiff: (1) "must demonstrate that he has suffered an injury-in-fact," and (to obtain injunctive relief), (2) demonstrate a "real and immediate threat of repeated injury" in the future.[11] Arroyo will discuss and apply each element to the facts of the present case.

### A. Arroyo suffered an injury in fact because he personally encountered inaccessible path of travel and sales counter at the Mobil gas station in March 2019.

Under the ADA, the general rule is that persons with disabilities are entitled to "full and equal enjoyment" of facilities, privileges and

---

[7] *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1039 -1040 (9th Cir. 2008).
[8] *Wilson v. Pier 1 Imports (US), Inc.*, 413 F. Supp. 2d 1130, 1133 (E.D. Cal. 2006).
[9] *Natl. Fedn. of the Blind of California v. Uber Techs., Inc.*, 103 F. Supp. 3d 1073, 1084 (N.D. Cal. 2015) (emphasis added).
[10] *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939 (9th Cir. 2011).
[11] *Chapman*, supra, 631 F.3d at 946.

accommodations offered by places of public accommodation.[12] A specific act of discrimination is the "failure to remove architectural barriers" that are readily achievable to remove.[13] The *Chapman* court held, therefore, a plaintiff's rights are violated under the ADA "when a disabled person encounters an accessibility barrier [that] interferes with the plaintiff's full and equal enjoyment of the facility."[14]

But what constitutes a barrier that interferes with full and equal enjoyment? *Chapman* answered this question definitively: "Because the ADAAG establishes the technical standards required for 'full and equal enjoyment,' if a barrier violating these standards relates to a plaintiff's disability, *it will impair* the plaintiff's full and equal access, which constitutes 'discrimination' under the ADA. That discrimination satisfies the 'injury-in-fact' element . . . ."[15] This is an *objective* test:

A disabled person who encounters a "barrier," i.e., an architectural feature that fails to comply with an ADAAG standard relating to his disability, suffers unlawful discrimination as defined by the ADA. Indeed, by establishing a national standard for minimum levels of accessibility in all new facilities, the ADAAG removes the risk of vexatious litigation that a more subjective test would create. Those responsible for new construction are on notice that if they comply with the ADAAG's objectively measurable requirements, they will be free from suit by a person who has a particular disability related to that requirement. [*Chapman*, supra, 631 F.3d at 948, fn. 5 (internal cites and quotes omitted for readability).]

---

[12] 42 U.S.C. § 12182(a).
[13] 42 U.S.C. § 12182(b)(2)(A)(iv).
[14] *Chapman*, supra, 631 F.3d at 947.
[15] *Chapman*, supra, 631 F.3d at 947 (emphasis added).

Opposition to Motion to Dismiss                    Case: 2:19-cv-02720-PA-MRW

In the present case, Arroyo went to Mobil gas station in March 2019 with the intention to avail himself of its goods and services, motivated in part to determine if the defendants comply with the disability access laws.[16] He found that the defendants did not provide accessible path of travel and sales counter in conformance with the ADA Standards. And there can be no question that this barrier "relates to" Arroyo's disability. Arroyo is a wheelchair user and the requirement for accessible path of travel and sales counter affect wheelchair users.

Thus, there can be no dispute that Arroyo suffered an injury in fact *during his visit of March 2019*. And defendants have not argued otherwise in its motion. Instead, defendant challenges Arroyo's standing to bring this ADA lawsuit because they claim he has not suffered an injury-in-fact coupled with an intent to return.

**B.    Arroyo has standing to obtain injunctive relief because he is deterred from returning to the gas station until the unlawful barriers are removed.**

The final question before the court in a standing inquiry is whether a plaintiff can establish that there is ongoing injury or a real likelihood of future injury.[17]  It is axiomatic that if there is no ongoing or likely future injury, then a plaintiff has no standing for injunctive relief. *Chapman* firmly established that there are two ways to demonstrate such standing: "Demonstrating an intent to return to a noncompliant accommodation is but one way for an injured plaintiff to establish Article III standing to pursue injunctive relief. A disabled individual also suffers a cognizable injury if he is deterred from visiting a noncompliant public

---

[16] Complaint (Docket Entry 1), ¶ 10.
[17] *Chapman*, supra, 631 F.3d at 946-47.

Opposition to Motion to Dismiss                Case: 2:19-cv-02720-PA-MRW

accommodation because he has encountered barriers related to his disability there."[18]

In the present case, Arroyo has alleged such deterrence. Arroyo's deterrence allegations match the *Chapman* court's holding, almost word for word: "Plaintiff will return to the Gas Station to avail himself of goods or services and to determine compliance with the disability access laws once it is represented to him that the Gas Station and its facilities are accessible. Plaintiff is currently deterred from doing so because of his knowledge of the existing barriers and his uncertainty about the existence of yet other barriers on the site. If the barriers are not removed, the plaintiff will face unlawful and discriminatory barriers again."[19]

This evidence is uncontroverted and more than sufficient to meet the threshold for standing, especially given that courts have held that standing should be construed generously, liberally and to the broadest extent possible in these ADA cases.

Stating an intention to return to a store after the barriers have been fixed is sufficient to establish standing: "When asked in his deposition whether he had any plans to return to the store, *Doran* answered, 'Yes, once it's fixed.' This deposition testimony demonstrates both *Doran's* continued deterrence from patronizing the store and his intention to return in the future once the barriers to his full and equal enjoyment of the goods and services offered there have been removed."[20]

The *Doran* court summarized, "Allegations that a plaintiff has visited a public accommodation on a prior occasion and is currently

---

[18] *Chapman*, supra, 631 F.3d at 949.
[19] Complaint (Docket Entry 1), ¶ 23.
[20] *Doran*, supra, 524 F.3d at 1041.

1  deterred from visiting that accommodation by accessibility barriers
2  establish that a plaintiff's injury is actual or imminent."[21]

3  Similarly, in the very first case to establish deterrence-standing, the
4  Ninth Circuit held, "We hold that a disabled individual who is currently
5  deterred from patronizing a public accommodation due to a defendant's
6  failure to comply with the ADA has suffered 'actual injury.' Similarly, a
7  plaintiff who is threatened with harm in the future because of existing or
8  imminently threatened non-compliance with the ADA suffers 'imminent
9  injury.'"[22]

10  And just recently, the Ninth Circuit weighed in again on the topic. In *Civ.*
11  *Rights Educ.*,[23] several disabled plaintiffs sued a hotel chain for
12  inaccessibility under the ADA.  They did not have any concrete or specific
13  plans to return and the defendants argued that it was not enough to say that
14  "they do not plan to stay at the hotels unless and until [defendant]
15  remedies the violation."[24] But the Ninth Circuit rejected the defense
16  argument: "The Named Plaintiffs need not intend to visit the hotels until
17  after remediation" because "under the ADA, once a plaintiff has actually
18  become aware of discriminatory conditions existing at a public
19  accommodation, and is thereby deterred from visiting or patronizing that
20  accommodation, the plaintiff has suffered an injury [that] continues so
21  long as equivalent access is denied."[25]

---

[21] *Doran*, supra, 524 F.3d at 1041.
[22] *Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1138 (9th Cir. 2002).
[23] *Civ. Rights Educ. and Enf't Ctr. v. Hosp. Properties Tr.*, 867 F.3d 1093 (9th Cir. 2017)
[24] *Civ. Rights Educ.*, 867 F.3d at 1100.
[25] *Civ. Rights Educ.*, 867 F.3d at 1100-1101.

## IV. There is no basis for the court to decline supplemental jurisdiction over the Unruh claim.

Under 28 U.S.C. § 1367(a) ("section 1367"), where a district court has original jurisdiction over a claim, it also has supplemental jurisdiction over "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." A state claim is part of the same "case or controversy" as a federal claim when the two "derive from a common nucleus of operative fact and are such that a plaintiff would ordinarily be expected to try them in one judicial proceeding."[26] In addition, "economy, convenience, fairness and comity" are to be considered in an analysis of supplemental jurisdiction.[27]

The exercise of supplemental jurisdiction is usually mandatory, unless the exercise of jurisdiction is prohibited by section 1367(b) or falls under one of the exceptions set forth in section 1367(c). "[U]nless a court properly invokes a section 1367(c) category exercising its discretion to decline to entertain pendent claims, supplemental jurisdiction *must be asserted*."[28] Under section 1367(c), a court may decline to exercise supplemental jurisdiction over a related state claim only if: "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction."[29]

---

[26] *Kuba v. 1-A Agr. Ass'n*, 387 F.3d 850, 855-56 (9th Cir. 2004)

[27] *City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 173 (1997)

[28] *Executive Software N. Am., Inc. v. U.S. Dist. Court for the N. Dist. of Cal.*, 24 F.3d 1545, 1555-56 (9th Cir. 1994), overruled on other grounds, *Cal. Dep't of Water Res. v. Powerex Corp.*, 533 F.3d 1087, 1093 (9th Cir. 2008).

[29] *Id.*, *citing* 28 U.S.C. § 1367(c).

12

1    In the present case, the defendant argues that the Unruh Civil
2  Rights Act claim should be dismissed because Plaintiff is forum shopping
3  to evade state law amendments. This argument borders on the specious
4  and cannot withstand scrutiny.

5
6  **A.    The defendants' argument about Plaintiff's engaging in improper forum-shopping has no legal merit**

7    The defendants provide a discussion about why they believe
8  California's procedural requirements for high-frequency litigants are
9  better suited for Mr. Arroyo and he is, therefore, trying to evade those
10  procedures by filing in federal court. This argument lacks any legal merit.
11  First, there are numerous reasons why the federal forum is superior to the
12  state court forum for prosecuting ADA/Unruh claims that have nothing to
13  do with procedure. The quality of the judges, the quality of the legal
14  rulings, the ease of the ECF system for filing and case access, the fact that
15  the vast majority of published authorities arise within the federal forum,
16  and the fact that the substantive law in this case is entirely federal are all
17  reasons why an ADA practitioner would (and virtually all do) prefer federal
18  court over state court for prosecuting ADA/Unruh claims. But, more
19  importantly, plaintiffs have the right to choose among appropriate forums
20  and there is nothing improper about considering the fact that the federal
21  forum has a more efficient and less cumbersome procedural rules. Even if
22  the sole reason that Mr. Arroyo chose the federal forum over the state
23  forum had to do with procedural rules, this would neither be improper nor
24  a basis for this Court to decline to exercise supplemental jurisdiction.

25
26  **B.    The federal rules of civil procedure govern the content of the Complaint, not the California procedural rules**

27    The defendants argue that the Complaint is subject to stringent
28  pleading requirements under California Code of Civil Procedure § 425.50

---

13

because Plaintiff and counsel are high-frequency filers. The defendants construe the section 425.50 of the California Code of Civil Procedure as requiring a more particular explanation of how the barriers denied Mr. Arroyo full and equal use or access that what is currently alleged in the Complaint.  Not only is this untrue, it is irrelevant.

Mr. Arroyo was *not required* to meet the CCP 425.50 pleading standard because his Complaint has been filed in federal court. "[S]tate pleading standards do not apply in federal court. Where state law directly conflicts with applicable provisions of the Federal Rules of Civil Procedure, federal courts must apply the Federal Rules—not state law. Here, the provisions of Cal. Code Civ. Proc. § 425.50 conflict with Federal Rule of Civil Procedure 8(a)(2), which only requires a short plain statement of the claim showing that the pleader is entitled to relief."[30] Or consider another court's recitation of the issue:

> Rule 8(a)(2) of the FRCP requires only a short plain statement of the claim showing that the pleader is entitled to relief.  Accordingly, state pleading requirements, so far as they are concerned with the degree of detail to be alleged, are irrelevant in federal court even as to claims arising under state law. Therefore, the requirements of CCP section 425.50 do not govern Plaintiff's complaint in federal court ...
>
> [*Anglin v. Bakersfield Prosthetics & Orthotics Ctr. Inc.*, 2013 WL 6858444, *6 (E.D. Cal. 2013).]

This is a classic *Erie v. Tompkins* analysis. This court does not lack jurisdiction because of some perceived failure to comply with California's procedural pleading rules.

---

[30] *Oliver v. In-N-Out Burgers*, 286 F.R.D. 475, 477-78 (S.D. Cal. 2012)

14

1    Although Arroyo's Unruh claim arises under state law, the allegations
2    are subject to the Federal Rules of Civil Procedure. *Kearns v. Ford Motor*
3    *Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) ("[T]he Federal Rules of Civil
4    Procedure apply in federal court, 'irrespective of the source of the subject
5    matter jurisdiction, and irrespective of whether the substantive law at issue
6    is state or federal.' "); *see also Cullen v. Netflix, Inc*., 880 F. Supp. 2d 1017,
7    1022 (N.D. Cal. 2012) (applying federal rules of civil procedure in
8    evaluating a motion to dismiss a disability discrimination complaint);
9    *Oliver v. In-N-Out Burgers*, 286 F.R.D. 475, 477 (S.D. Cal. 2012) (noting
10   that the provisions of Cal. Code Civ. Proc. § 425.50 conflict with Federal
11   Rule of Civil Procedure 8(a)(2) and applying the Federal Rules).

12

13   **V.  By disparaging Mr. Arroyo and requiring specific**
     **procedural and substantive conditions to be met before**
14   **he can file Complaint – and noting the numbers of his**
     **ADA cases – the defendant seeks to influence the court**
15   **with irrelevant material**

16       In its motion to dismiss, the defense notes Mr. Arroyo's litigation
17   history in an attempt to disparage his motives and, therefore, to suggest a
18   lack of integrity with respect to the substantive claims of his case. "These
19   arguments are representative of a troubling trend in which disability access
20   defendants attack the motives of plaintiffs and their counsel in nearly
21   every case brought to enforce the right to equal access guaranteed by the
22   ADA and California statutes."[31] Aside from the fact that disparaging
23   comments of this sort are unprofessional and unworthy of court
24   proceedings, they have no relevance.

25

26

27

28
     _____

[31] *Kittok v. Leslie's Poolmart, Inc.*, 687 F. Supp. 2d 953, 958 (C.D. Cal. 2009).

Opposition to Motion to Dismiss                    Case: 2:19-cv-02720-PA-MRW

## A. Serial Litigation is a Legitimate Method of Enforcement

Serial litigation, *i.e.*, multiple lawsuits brought by a single plaintiff, is a legitimate method of enforcing the law. The courts that have seriously grappled with the issue have concluded that there is nothing inherently wrong with serial litigation and, in fact, it serves a public good. Citing to Supreme Court precedence, one federal court noted, "successful ADA plaintiffs confer a tremendous benefit upon our society at large in addition to the attainment of redress for their personal individual injuries...the enforcement of civil rights statutes by plaintiffs as private attorneys general is an important part of the underlying policy behind the law."[32]

The Ninth Circuit noted that "the term *professional* as in *professional plaintiff* is not a *dirty word* and should not itself undermine one's ability to seek redress for injuries suffered."[33]  The *Gordon* court was quoting the court in *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 954 (7th Cir. 2006) where the plaintiffs had brought more than 50 cases under the FRCA and were "big time" litigants but the appellate court rejected criticisms of this fact and stated "what the district judge did not explain, though, is why 'professional' is a dirty word. It implies experience, if not expertise."

"Civil rights law depends heavily on private enforcement."[34] In fact, private serial litigation is the cornerstone of ADA enforcement. The Ninth Circuit has acknowledged – in multiple published opinions – that most ADA lawsuits are brought by a small number of private plaintiffs who view

---

[32] *Walker v. Carnival Cruise Lines*, 107 F.Supp.2d 1135, 1143 (N.D. Cal. 2000) (the "benefits of such changes clearly redound not only to the plaintiffs themselves, but to similarly situated disabled persons, and the entire society at large. As a result, plaintiffs or plaintiff classes who bring suit pursuant to the ADA do so in the role of private attorneys general who seek to vindicate a policy of the highest priority.").

[33] *Gordon v. Virtumondo, Inc.*, 575 F.3d 1040, 1056 (9th Cir. 2009) (quote marks in original switched to italics for readability and internal cites omitted).

[34] *Parr v. L & L Drive-Inn Restaurant*, 96 F.Supp.2d 1065, 1082 (D. Hawaii  2000).

Opposition to Motion to Dismiss                    Case: 2:19-cv-02720-PA-MRW

themselves as champions of the disabled, and "for the ADA to yield its promise of equal access for the disabled, it may indeed be necessary and desirable for committed individuals to bring serials litigation advancing the time when public accommodations will be compliant with the ADA."[35]

Not only has the Ninth Circuit – quoting the Department of Justice – noted that private litigants are essential for enforcement of the ADA, but the California Legislature feels the same way. When California recently passed the Construction-Related Accessibility Standards Compliance Act, it specifically found that despite the passage of the ADA and the 1992 amendments to the Unruh Act "persons with disabilities are still being denied full and equal access to public facilities in many instances."[36] The final Senate analysis of S.B. 1608 further noted that "there is so little, if any, public prosecution of access violations, that thus private enforcement efforts are central to the means by which these laws, like other civil rights laws, are designed to be enforced."[37]

## B.  The Plaintiff's "Motives" Are Irrelevant

The implied argument is that the plaintiff is actively engaged in serial litigation to line his own pockets with the statutory penalties available under the Unruh Civil Rights Act and, therefore, his claims should be looked at with skepticism. This argument should be rejected for several reasons. First, of course a serial litigator is motivated by the right to recover statutory penalties. That is the *very purpose* of statutory penalties:

> It is apparent from this legislative history that section 52 has at least two important non-punitive purposes. The first is simply to provide increased compensation to the plaintiff.

---

[35] *See*, e.g. *Antoninetti v. Chipotle Mexican Grill, Inc.*, 614 F.3d 971, 980 (9th Cir. 2010)

[36] Cal. Gov't Code § 8299.

[37] S. B. 1608 Senate Bill Analysis at 4 (Aug. 28, 2008).

The second purpose, and perhaps the more important one, is *to encourage private parties* to seek redress through the civil justice system by *making it more economically attractive for them to sue.*

[*Los Angeles Cnty. Metro. Transp. Auth. v. Superior Court*, 123 Cal. App. 4th 261, 270-71 (2004) (emphasis added).]

"Moreover, the inclusion of penalties and damages is the driving force that facilitates voluntary compliance with the ADA."[38] Thus, the fact that the Mr. Arroyo may be motivated by the right to recover statutory penalties is not an *abuse* of the law; it is the intended function of the law.

The court in *Feezor v. Chico Lodging, LLC*, 422 F. Supp. 2d 1179, 1181 (E.D. Cal. 2006) reached the same conclusion. The court was faced with a standing challenge and an attack on the plaintiff's credibility because the plaintiff had filed numerous other cases. The Court rejected the implication and stated, "The fact that plaintiff is fulfilling the Congressional purpose when it provided for private enforcement of the ADA is hardly evidence of bad faith."

### C. Litigation history is not a valid legal basis to challenge the plaintiff's standing or credibility or to diminish rights

It is, perhaps, understandable to have a knee-jerk reaction that would lead one to suspect inappropriate behavior by a plaintiff filing an avalanche of lawsuits. But this initial concern cannot withstand serious scrutiny given the fact that these businesses are *actually in violation* of the law. The number of disability access lawsuits filed by an individual plaintiff is not evidence of abuse. The *Wilson v. Murillo* holding on this issue is applicable in the present case:

---

[38] *Parr v. L & L Drive-Inn Restaurant*, 96 F.Supp.2d 1065, 1082 (D. Hawaii 2000).

Opposition to Motion to Dismiss          Case: 2:19-cv-02720-PA-MRW

1
2
3
4
5
6
7
8
9

> While Wilson obviously views himself as a champion of the disabled, he is condemned by Murillo as a serial litigant who exploits the ADA by filing lawsuits with "a clear intent to harass businesses and extort quick cash settlements...." Wilson does not dispute that he has filed many ADA access lawsuits. Numerosity alone, however, is insufficient to show that his lawsuits are frivolous or harassing. One court has examined the contents of Wilson's filings and has made an express finding that his ADA claims are not frivolous and that he is not a vexatious litigant. "From all that appears, the number of lawsuits [Wilson] has filed does not reflect that he is a vexatious litigant; rather, it appears to reflect the failure of the defendants to comply with the law." (*Wilson v. Pier I Imports (US), Inc.* (E.D.Cal.2006) 411 F.Supp.2d 1196, 1200.) This difference in points of view being noted, we emphasize that Wilson's **litigation history is immaterial to our resolution of this case**.

10
11

> [*Wilson v. Murillo* 163 Cal.App.4th 1124, 1128, fn. 3 (2008).]

12
13
14
15

The "simple fact that a plaintiff has filed a large number of complaints" or the "textual and factual similarity of a plaintiff's complaints" is "not a basis" for finding that the plaintiff is involved in improper or vexatious litigation.[39]

16
17
18

In summary, it is clear that a history of bringing meritorious ADA claims cannot be used to diminish rights or as a basis for arguing that the court lacks jurisdiction.

19
20

## VI. Conclusion

21
22
23
24

Arroyo respectfully requests this Court deny the defense motion and permit this case to proceed past the pleadings stage. The Complaint gives Defendants fair notice of Arroyo's claims and has adequate factual and legal allegations.

25
26
27
28

---

[39] *Molski Evergreen Dynasty Corp. I*, 500 F.3d 1047, 1061 (9th Cir. 2007).

Opposition to Motion to Dismiss                    Case: 2:19-cv-02720-PA-MRW

1   Dated: June 24, 2019              CENTER FOR DISABILITY ACCESS

2

3

4                                    By: ___/s/ Elliott Montgomery___

5                                         ELLIOTT MONTGOMERY

6                                         Attorneys for Plaintiff

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Opposition to Motion to Dismiss                    Case: 2:19-cv-02720-PA-MRW